UNITED JEWISH ORGANIZATIONS OF
WILLIAMSBURGH, INC., et al.,
Plaintiffs,

v.

Malcolm WILSON, Governor of The State
of New York, et al., Defendants.

No. 74 C 877.

United States District Court,
E. D. New York.

July 25, 1974.

Miller, Cassidy, Larroca & Lewin, Washington, D. C. (Nathan Lewin Washington, D. C., and Dennis Rapps, Brooklyn, N. Y., of counsel), for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of N. Y. (George D. Zuckerman, Asst. Atty. Gen., of counsel), for defendants, Wilson, Ghezzi, Anderson and Duryea.

William B. Saxbe, Atty. Gen. of U. S. (Richard Seldin, Washington, D. C., and David G. Trager, U. S. Atty., E. D. N. Y., of counsel, for defendant, United States.

Jack Greenberg and Eric Schnapper, New York City, for N.A.A.C.P., and others, applicants for intervention.

BRUCHHAUSEN, District Judge.

This suit was instituted to declare the recently drawn redistricted lines of the State Senatorial, State Assembly and U. S. Congressional Districts in Kings County, pursuant to Chapters 588, 589, 590, 591 and 599 of the New York Laws of 1974, unconstitutional.

On April 1, 1974, the Attorney General of the United States through his authorized representative, J. Stanley Pottinger, contacted the office of the Attorney General of the State of New York advising him that the Assemblanic, Senatorial and Congressional district lines in Kings County established pursuant to the applicable laws of 1972 were invalid

under Section 5 of the Voting Rights Act because it was determined by the Attorney General of the United States that those lines would produce a racially discriminatory effect, Exhibit VI annexed to the complaint. That determination precluded the use of those district lines within Kings County. The Attorney General of the State of New York concluded to accept that determination and not to appeal the decision of Mr. Pottinger. It is alleged in the memorandum of the N.A.A.C.P. and not controverted that several groups sought to appeal the ruling of Mr. Pottinger, but met with failure when their actions were dismissed by the District Court for the District of Columbia. The New York State Legislature on May 30, 1974 enacted new lines in an attempt to comply with removing any discriminatory aspects of the 1972 lines, and to comply with the determination of the Attorney General of the United States. These new lines were submitted for approval, pursuant to the Voting Rights Act.

It is alleged that the 1974 redistricting laws violate the rights of the plaintiffs in denying them the equal protection of the laws and in depriving them of liberty without due process of law in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution and are, consequently, invalid. In short, the plaintiffs, members of the Hasidic community in Williamsburgh, object to be divided into separate senatorial and assemblanic districts by the challenged 1974 State statutes.

The defendants then moved for a dismissal of the complaint for failure to state a claim for which relief can be granted and for lack of jurisdiction.

Subsequent to a full hearing before this Court, on July 1, 1974, Mr. J. Stanley Pottinger, acting on behalf of the Attorney General of the United States, gave approval of the new 1974 lines as not being violative of the Voting Rights Act. See letter addressed to the Attorney General of the State of New York together with a Memorandum and Decision attached to the Supplemental Memorandum for the N.A.A.C.P., appearing as amicus curiae.

The position of the plaintiffs is untenable, and the motions of the defendants to dismiss are granted.

■ In view of the approval of the 1974 lines by the office of the Attorney General of the United States, the cause of action brought pursuant to the Voting Rights Act must be dismissed. In Allen v. State Board of Elections, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1, the Court held in part at page 548, 89 S.Ct. at page 822:

"In South Carolina v. Katzenbach, 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966), we held the provisions of the Act involved in these cases to be constitutional. These cases merely require us to determine whether the various state enactments involved are subject to the requirements of the Act."

The Court further held in part at pages 549, 550, at pages 823 of 89 S.Ct:

"* * * Once the State has successfully complied with the § 5 approval requirements, private parties may enjoin the enforcement of the new enactment only in traditional suits attacking its constitutionality; there is no further remedy provided by § 5."

■ The allegations by the plaintiffs of a violation of their rights pursuant to the Fourteenth and Fifteenth Amendments to the Constitution are also untenable. Jurisdiction is noted pursuant to 28 U.S.C.A. § 1343, and 42 U.S.C.A. § 1983.

In Ince v. Rockefeller, S.D.N.Y., 290 F.Supp. 878, the Court held in part at page 883:

"* * * Pleas for separate community recognition, similar to those raised by plaintiffs here, were made by intervenors from Flatbush and Bay Ridge in contesting the recently enacted congressional districts in New York State. In rejecting their contentions, the three-judge Court in its unanimous opinion in Wells v. Rocke-

feller, 281 F.Supp. 821, 825 (S.D.N.Y. 1968) stated:

'The Legislature cannot be expected to satisfy, by its redistricting action, the personal political ambitions or the district preferences of all of our citizens. For everyone on the wrong side of the line, there may well be his counterpart on the right side. The twenty or more identifiable communities of Brooklyn may well have preserved their own traditions from the days of the Dutch, although in today's rapidly changing world, this is doubtful. But even Brooklyn's large population will not support twenty community congressmen. Of necessity, there must be lines which divide.' "

■ It is further well settled that there is no federal constitutional right either to contiguity or compactness of voting districts. Wood v. Broom, 287 U.S. 1, 53 S.Ct. 1, 77 L.Ed. 131.

The case at bar is unlike that in Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 where the Alabama legislature by alteration excluded all but five of 400 Negro voters from the City of Tuskegee voting rolls. In this case as in the Ince case, supra, no one is being disenfranchised by the redistricting and no voting right is being extinguished.

It is further well settled that racial considerations have been approved to correct a wrong. The use of a pupil assignment plan, based on race, was upheld in Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554.

In Norwalk Core v. Norwalk Redevelopment Agency, 395 F.2d 920 (2d Cir., 1968), racial considerations were sustained in promoting integration. See also Otero v. New York City Housing Authority, 484 F.2d 1122 (2d Cir., 1973).

In the field of labor, racial quotas requiring preferential hiring were sustained to overcome prior discrimination, Associated General Contractors of Mass. Inc. v. Altshuler, 1 Cir., 490 F.2d 9, cert.

denied 416 U.S. 957, 94 S.Ct. 1971, 40 L.Ed.2d 307 (1974).

The Court after careful consideration of the record, arguments and applicable law concludes that the plaintiffs' motions for a preliminary injunction and summary judgment be denied. The defendants' motions to dismiss the complaint are granted.

It is so ordered.